PAUL DEBOW *against* GEORGE W. COLFAX and ANDREW TITUS.

If A. as minister of a certain church, is entitled to the possession of the parsonage land, and while in possession, sows the land with grain, then sells the growing crop to B. and voluntarily ceases to be minister of that church, leaves the parsonage land, and removes to another congregation before the crop is harvested, B. has not such a title to the crop, as to enable him to maintain trover against a person who takes it away. A disclaimer, by the consistory of the church of all title to the crop in question, is not evidence to support the title of B.

He who has an estate, in lands, the duration of which is uncertain in point of time, and he who has such an estate as may perhaps continue until the grain be ripe, shall, if he sows the land, be permitted to enter upon it at harvest, and reap the crop, although in the mean time his estate may have ended either by the act of God, or of the law. But if the estate is between seed time and harvest, determined by the act of the tenant, the growing crop passes with the land, to him who thereupon becomes the immediate owner of the latter.

To maintain trover, the plaintiff must prove property in the article for which the action is brought.

*Gifford* for plaintiff.

*Frelinghuysen* for defendant.

EWING, C. J.—Upon the trial of the cause, at the Bergen Circuit, in October, 1824, before the late *Chief Justice*, a non-suit was ordered, which the plaintiff now seeks to set aside.

From circumstances satisfactorily explained, on the argument at the bar, and not necessary to be farther adverted to, the facts as they occurred at the trial, are not exhibited to us in the usual manner. The documents laid before us, and the statements and admissions of the respective counsel, however, present in substance the following case. The congregation of the Dutch Church at Pompton Plains, are the owners of a tract of land called the parsonage land, of which, the title is vested in the trustees, chosen according to the usages of that church and agreeably to the act of the legislature. This parsonage land was provided and designed for the use of the minister of that church, and to aid in his support, and was accordingly occupied by the incumbent for the time being. In the year 1815, the Rev. Mr. Field was the minister, and in the fall of that year he sowed part of the land with rye. Early in the spring of 1816 he sold the rye, in the ground, to one Romer, who afterwards sold it to the plaintiff. Antecedent to the 1st of May, 1816, but after the sale, Mr. Field of his own act, and voluntarily, withdrew from the ministerial service, and ceased to be the minister of that church, left the parsonage land and removed to another congregation and place of residence. The rye was harvested by the defendants. The present action in trover was brought against them, and went to trial upon the plea of not guilty; and the *Chief Justice*, being of opinion that the plaintiff had not shewn property in the rye, directed a non-suit.

In examining the propriety of the non-suit, the first question to be resolved is, whether Mr. Field would himself have been entitled to cut and carry away the grain at maturity had no sale by him been made? At the time he sowed the grain, he was the minister, in possession, and entitled to hold and enjoy the parsonage so long as he remained minister. The precise nature or apt denomination of the estate which he had in the premises, whether of freehold, or for years, or at will, needs not to be sought. For the law of

emblements, so far as may be necessary for the determination of this point will equally apply, whatever may be its name or nature. He who has an estate or interest in lands, the duration of which is uncertain in point of time, and he who has such an estate as may perhaps continue until the grain be ripe, shall, if he sows the land, be permitted, or his executors or administrators, in case of his decease, to enter upon it at harvest and reap the crop, although in the mean time his estate may have ended, either by the act of God or of the law. But if the estate is between seed time and harvest, determined by the act of the tenant, the growing crop passes with the land, to him who thereupon becomes the immediate owner of the latter. *Shep. Touch.* 451; *Co. Lit.* 55. This is where a woman held an estate in lands during her widowhood, which is technically denominated an estate for life, because it may last so long, and sowed the land and before severance married, the crop was adjudged to belong to the landlord of whom she held, and not to her or her husband. *Oland's case,* 5 *Co.* 116. So if tenant for life commits wastes and thereby incurs a forfeiture, or if he surrenders his estate, or if tenant at will himself determines his will and refuses to occupy the ground; in these and similar cases, he loses the emblements. *Cro. Eliz.* 461; *Co. Lit.* 55, *a.* 2 *Bl. Com.* 123, 145. To apply these principles: Mr. Field, when he sowed, had an estate which might have continued until the ensuing harvest. But in the mean time, by his own voluntary act, he put an end to the estate. He ceased then to be the owner of the growing crop, and could not have reaped it had no sale been made.

The enquiry results then, in the second place, what is the effect of that sale? Does it vest in the purchaser a greater right than would have remained in the seller, Mr. Field? Shall the former hold, and may he take the crop, although as we have seen, the latter might not. The counsel of the plaintiff sought to maintain the affirmative, and relied on the rule which gives to the undertenants or lessees of ten-

ants for life, greater indulgences than their lessors, the tenants for life; as in the case of a woman who holds *durante viduitate sua,* if she leases her estate to an undertenant who sows the land and she then marries, her act shall not deprive him of the emblements. This doctrine is sound; yet it appears not to have been without question at one time, for *Lord Coke,* in his report of *Oland's Case,* says expressly, the lessee of the window shall not have the emblements, and the reason assigned is, that he shall not be, as to the first lessor, in a better condition than his own lessor was. But *Croke* in his report of the same case by the name of *Oland* v. *Burdwick,* *Cro. Eliz.* 461, states the opinion of the court to have been, that the lessee should have the emblements. The doctrine reported by *Croke* has been followed by *Blackstone,* and the writers and judges of modern times, and may now be considered as the correct and settled rule. But this rule always assumes the fact that the grain has been sown by the undertenant or lessee, and not by the tenant for life.

I have found no adjudged case, nor even a *dictum,* which gives the underlessee the crop where the grain has been sown, not by him but by his lessor. And just reason and sound principle would forbid such extension of the rule. Its foundation is due encouragement to husbandry, and the security of him who labors and sows from the effect of the acts of another not under his control. But the rule would be worthless from obvious liability to evasion, if the widow might the hour before her marriage, or the tenant on the day antecedent to his commission of waste, avoid the consequence of those acts by so simple a device as the sale of the crop. So far as we meet with anything in the books, this distinction is recognized. In the case of *Grantham* v. *Hawley,* *Hob.* 132, it is said, if a man conveys an estate, which he has sowed, to A. for life, and A. dies before the crop is severed, the person who sowed it shall have it; and on the margin it is said, if the lessor sow it, and then convey the

land to A. for life, remainder to B. for life, and remainder to C., and both die, the lessor shall have the crop that he sowed. Now it is clear in these cases, that if A. and not the grantor, had sowed the grain, his executor or administrator would have taken the crop. Hence a difference in the rule, from the person by whom the grain has been sown, is clearly evinced. In the case before us then, Mr. Field having sowed the crop could not vest in Romer an higher or greater right over it than he himself held; and if by his act he has defeated any just expectation of the vendee, from him and not from these defendants should redress be sought.

On these considerations I am of opinion the non-suit was rightly ordered.

As another reason for setting aside the non-suit, the counsel of the plaintiff insisted that the cause should have been put to the jury upon the facts. I think otherwise. Upon the facts exhibited in evidence on the part of the plaintiff he had not shewn, in matter of law, property in himself in the rye in question, an indispensable pillar of his action. If the cause had been submitted to the jury, the duty of the judge would have been to have charged them, that the plaintiff taking the facts to be true, had failed to shew a right to recover, and was not entitled to their verdict. A plaintiff may not ask a jury for a verdict, and the judge may well prevent by a non-suit, a verdict mistakenly rendered, and which afterwards must be set aside, if, on the plaintiff's own case, uncontroverted as to fact, the law is clearly against him. Moreover, from the affidavits laid before us, it appears the plaintiff's counsel, and wisely too, preferred a non-suit; for after the opinion of the judge, as to the legal effect of the voluntary removal of Mr. Field, had been expressed, the counsel of the plaintiff said: "if that is the opinion of the court, the plaintiff must submit to a non-suit, and he was accordingly non-suited." I remark wisely, for he has thereby secured to his client, the plaintiff, review of the legal questions here, and an opportunity if the opinion of

this court should be against him, to make out in another action, a better case in point of fact, if fact will warrant it.

Another reason for setting aside the non-suit is, that legal evidence offered by the plaintiff was overruled. In the course of the trial he offered to read to the jury a resolution of the consistory of the church, adopted on the 29th November, 1817, to the following effect: "that this body disavows any claim to the grain mentioned in the resolution of the 4th of May, 1816, and declare that said resolution was passed in anticipation of an expected purchase, which has never been realized." The resolve of the 4th of May, 1816, was, that "Paul Debow take particular care of the grain on the parsonage lot, lying in Bergen county, and that he shall be satisfied for his trouble." The evidence of the resolve, of November, 1817, because it amounted at the most, only to a disclaimer on the part of the church, but vested no title in the plaintiff, was overruled. And in my opinion, rightly. The question depended on the title or property of the plaintiff in the rye. If he legally acquired none, under the purchase by Romer from Mr. Field, he had none, nor could any mere disavowal or disclaimer on the part of the consistory supply, or tend to supply the want. A very different case might have been presented, if a valid act on the part of the corporation, made in due season, and antecedent to the harvest, transferring to Paul Debow their property in the rye, had been produced. But as was justly remarked by the judge, it was no more, in its most liberal acceptation, than a disavowal on their part, not a transfer; and if indeed a transfer, of what avail to establish a legal title in the plaintiff, could have been their transfer of a chose in action in November, 1817, upwards of a year after the rye had been cut, and in the possession of the defendants?

An undue weight seemed on the argument at the bar, to be attributed to the fact that an action for the taking of the rye had been commenced in a justice's court, to which these defendants had filed a plea of title. The plaintiff however

in this court accepted, without objection, the plea of not guilty, and went to trial upon it. The title of the defendants, or of the church, or of any other person than the plaintiff was not therefore the subject of enquiry, until he had shown in himself a title *prima facie* valid in law and fact.

Let the non-suit stand.